# GENERAL AGENTS INSURANCE COMPANY
## *v.* ST. PAUL INSURANCE COMPANY

CA 86-497                                      732 S.W.2d 868

Court of Appeals of Arkansas
Division I
Opinion delivered July 22, 1987

*Laser, Sharp & Mayes, P.A.*, for appellant.

*Friday, Eldredge & Clark*, for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes from the Pulaski County Chancery Court, Fourth Division. Appellant, General Agents Insurance Company, appeals the court's order granting a reformation of an insurance policy issued by appellant to Sonny Roswell, d/b/a Roswell Used Cars, to include liability coverage. We affirm.

Appellee, the St. Paul Insurance Company, sued to reform an insurance contract to require the issuing company, appellant, to add garage liability coverage for Sonny Roswell, Individually, and Sonny Roswell, d/b/a Roswell Used Cars. The facts were stipulated by the parties. Sonny Roswell, Individually, and Sonny Roswell d/b/a Roswell Used Cars, was a customer of Mathis-McClellan Insurance Agency, an insurance agency in Little Rock, Arkansas. The St. Paul Insurance Company was the errors and omissions insurance carrier for Mathis-McClellan. Mathis-McClellan would place Roswell's insurance needs with companies, such as Lloyd's and appellant, by acting through an insurance broker, Arkansas All Risks. Lloyd's and appellant are surplus lines carriers and subscribers to surplus lines insurance policies issued by the M.G.A. Agency. Mathis-McClellan had no binding authority with appellant or Lloyd's. In order to place, renew or amend coverage with those companies, Mathis-McClellan would obtain information required by those companies for underwriting purposes and submit such information to Arkansas All Risks. Arkansas All Risks was, at all times relevant hereto, a general agent for appellant. Mathis-McClellan acted as a soliciting agent for appellant with respect to submitting the request for renewal on behalf of Roswell. Mathis-McClellan had no written or oral agency contract with appellant or Arkansas All Risks. Appellant and Arkansas All Risks did encourage and solicit agents such as Mathis-McClellan Insurance Agency to submit applications for insurance with them.

From September 25, 1980, through April 29, 1981, Lloyd's Insurance Company, under Policy #LGL 101 215, insured Roswell Used Cars with open-lot and garage liability coverage. Roswell procured this policy through Mathis-McClellan, which acquired the policy through the insurance broker Arkansas All

Risks, Inc. This coverage was renewed to be effective April 29, 1981, to June 11, 1981. The policy initially contained no garage liability coverage. During the policy term Mathis-McClellan requested such coverage be added to the policy. Before the expiration of the Lloyd's insurance policy, Roswell requested that his insurance coverage be renewed. Mathis-McClellan Insurance Agency caused to be issued General Agents Insurance policy #GLA 105 814, issued by appellant, to be effective June 11, 1981, to June 11, 1982. Mathis-McClellan again procured this policy through Arkansas All Risks, Inc. Mathis-McClellan failed to request that Arkansas All Risks include garage liability coverage and Arkansas All Risks bound the coverage that was requested by Mathis-McClellan. The General Agents policy contained the notation that it was a renewal of the prior Lloyd's policy.

On January 20, 1982, a collision occurred in Pulaski County, Arkansas, between a vehicle owned by Southern Investment Company and a vehicle owned by Roswell, d/b/a Roswell Used Cars, and being driven by Edward A. Lamb. Thereafter, Roswell made demand upon appellant through Mathis-McClellan to defend any claims and indemnify for any damages arising out of the incident. Appellant denied coverage, advising that the garage liability coverage which existed under the prior Lloyd's policy was not within the ambit of Policy #GLA 105 814.

The parties also stipulated that the prior Lloyd's insurance policy, as subsequently endorsed, did provide coverage that would have covered the damages resulting from the accident occurring on January 20, 1982. Appellant stipulated that it would have provided the coverage on the same terms as the Lloyd's policy, had the proper premium been paid and if the risk was acceptable.

Roswell, d/b/a Roswell Used Cars, paid insurance premiums, which were financed through a bank or through Mathis-McClellan, and Roswell had no personal knowledge of the exact annual premium. Roswell relied on Mathis-McClellan Insurance Agency to provide the same coverage that was provided under the Lloyd's insurance policy. Neither appellant nor Arkansas All Risks had any direct contact with Roswell, they dealt exclusively with Mathis-McClellan. Roswell, either individually or through Mr. Bobby Carrier, an employee, had requested that Mathis-McClellan renew coverage on the same terms as the prior Lloyd's

coverage.

As a result of the January 20, 1982, collision, a lawsuit was filed against Roswell that resulted in a jury verdict against Roswell Used Cars in the amount of $827.04 for James Elliott, $4,787.00 to Leon B. Bush, Jr., and $63,000.00 to Edward J. Powell. In addition, prejudgment interest in amount of six percent per annum was assessed on the property damages claims. The judgments by all other individual plaintiffs have been satisfied by the St. Paul Insurance Company.

In addition to the stipulated facts, certain facts were developed through depositions which were made a part of the record for consideration by the court. The policy that is to be reformed in this action clearly states on its face that it is a renewal of the prior Lloyd's policy. The Lloyd's policy provided the necessary coverage to protect the insured.

All parties to this action moved for a summary judgment. The only issue in this case is one of law, i.e., whether, under these undisputed facts, appellee, as the liability insurance carrier for Mathis-McClellan, was entitled to have the insurance policy reformed to contain liability coverage. Appellant argues three points for reversal of the trial court's reformation of the policy: (1) There was no mutual mistake of the parties in issuance of appellant's policy; (2) the negligence or mistake of Mathis-McClellan is not imputable to appellant, since Mathis-McClellan had no authority to bind coverage for appellant; (3) reformation was improper to be applied to a new and separate contract issued by a separate carrier from the carrier who initially insured the risk.

■ We find that this case is controlled by the case of *American Casualty Co.* v. *Hambleton,* 233 Ark. 942, 349 S.W.2d 664 (1961), which held that it is the duty of an insurer to issue a renewal policy on the same terms and conditions as the original contract, and, if it fails to do so, the renewal policy may be reformed to give effect to this result. In *Hambleton,* where the insurer did not notify the insured that the renewal differed from the original policy, the insured's personal representative was entitled to have the renewal policy reformed.

In *Hambleton,* a partnership procured through an insurance

agent, George Walker, a workers' compensation policy covering all employees of the partnership. The partners themselves were not employees within the policy. However, by a special endorsement on the policy, the partners were included in the coverage and paid an additional premium for that coverage.

The following year the partnership renewed its policy with the same coverage of the partners and the additional premium was paid. The next year the partnership ordered the policy renewed and the agent, Walker, ordered a renewal contract from the insurance company. A policy was forwarded to Walker. This policy did not include the coverage for the partners and Walker did not know the contents of the policy and did not explain the change of coverage to the partners.

One of the partners was fatally injured while operating a tractor for the partnership. The administratrix of the deceased partner's estate brought an action against the insurance company requesting that the policy be reformed to include coverage for the partners in accordance with the coverage of the policies of prior years.

 The Arkansas Supreme Court held as follows:

"An insurance policy, like any other contract, which by reason of mistake in its execution does not conform to the real agreement of the parties, may be reformed in a court of equity," *Phoenix Insurance Company* v. *State*, 76 Ark. 180, 88 S.W. 917 [Citing *Thompson* v. *Insurance Co.*, 136 U.S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; *Snell* v. *Insurance Co.*, 98 U.S. 85, 25 L. Ed. 52; *Jamison* v. *State Insurance Co.*, 85 Iowa 229, 52 N.W. 185.]

. . . .

The renewal of an insurance policy is basically nothing more than the moving of the terminal date to a later time and if the appellant [the insurer] saw fit for any reason to vary the terms of the policy it had been requested to renew, the duty was clearly upon it to advise the insured of the changes which had been made. [citation omitted]

. . . .

"An insurance policy may be reformed even after the

loss insured against, so as to express the parties' real intent. Since it is the duty of an insurer to issue a renewal policy on the same terms and conditions as the original contract, if it fails to do so, the renewal policy may be reformed to give effect to this result. This is true though the insured did not read the policy and discover a material change until after occurrence of the loss. It may, however, be discretionary with the court as to whether to grant or deny relief on the ground of the plaintiff's neglect to discover the change sooner."

*Id.* at 944-947, 349 S.W.2d at 666-668 (citation omitted).

In the case at bar, we find that appellant is estopped by reason of its nondisclosure. The policy clearly states on its face that it is a renewal of the Lloyd's policy. The parties stipulated that the Lloyd's policy included liability coverage. Appellant had a duty to notify the insured that the coverage was changed on the renewal policy. It has been established by the facts in the record that no notice of change was given. Therefore, appellant is estopped from asserting the absence of liability coverage in the renewal policy.

Appellant's argument, that there was no mutual mistake, is based on the fact that the application for insurance submitted by Mathis-McClellan requested dealer's open lot and driveway collision, and it did not request liability coverage. In its brief, appellant states that it is undisputed that Roswell asked Mathis-McClellan for liability coverage but Mathis-McClellan, through mistake or neglect, failed to write that on the renewal application. Appellant agreed that Mathis-McClellan is appellant's soliciting agent, however, appellant argues that, as a soliciting agent, Mathis-McClellan had no authority to bind appellant.

Appellant's argument does not convince us that *Hambleton* should not apply to this case. Where the facts have been truthfully stated to the soliciting agent, but, by fraud, negligence, or mistake, are misstated in the application, the company cannot set up the misstatements in avoidance of its liability, if the agent was acting within his real or apparent authority and there is no fraud or collusion on the part of the insured. *Southern National Insurance Co. v. Heggie*, 206 Ark. 196, 174 S.W.2d 931 (1943).

There is no evidence of fraud or collusion in this case and appellant stipulated that Mathis-McClellan was appellant's soliciting agent. Therefore, appellant is estopped from asserting the absence of a request for liability coverage in the application.

We find no merit in appellant's argument that the renewal policy was a separate contract issued by a separate carrier. The policy clearly states on its face that it is a renewal of the Lloyd's policy, which policy did contain the necessary coverage. The fact that it was issued by appellant does not preclude application of the rule in *Hambleton*.

For the reasons stated above the trial court's order granting reformation of the policy is affirmed.

Affirmed.

COOPER and MAYFIELD, JJ., agree.