Debra L. BURNETT *v.* PHILADELPHIA LIFE INSURANCE COMPANY

CA 02-832                                    101 S.W.3d 843

Court of Appeals of Arkansas
Division IV
Opinion delivered April 2, 2003

[Petition for rehearing denied May 7, 2003.]

*Eddy & Kelley, P.A.*, by: *David L. Eddy*, for appellant.

*Gordon, Caruth & Virden*, by: *Ben Caruth*; and *Huffer & Weathers, P.C.*, by: *Steve Huffer*, for appellee.

JOHN MAUZY PITTMAN, Judge. This is a second appeal from an order granting appellee summary judgment on a claim for proceeds of a life insurance policy. On April 24, 2002, this court dismissed the appeal for lack of a final order. *Burnett v. Philadelphia Life Ins. Co.*, CA01-991 (Ark. App. April 24, 2002). The trial court entered a final order on June 4, 2002. This appeal followed. We reverse and remand.

On November 1, 1997, Emmitt Bartch, the decedent, made an application for life insurance with appellee Philadelphia Life Insurance Company through its soliciting agent, Roy Touchet. The policy named appellant Debra Burnett, the decedent's fiancée, as beneficiary. Touchet filled out the application by asking Bartch the questions. Bartch signed the application form on November 1, 1997. One of the questions on the application asked for disclosure of any significant medical conditions or treatment. Bartch suffered from Marfan's Syndrome, a connective-tissue disorder. This condition was not noted on the application. Appellant presented evidence that Bartch told Touchet about this condition but that Touchet did not correctly complete the appli-

cation form. Appellee issued a policy effective February 27, 1998. Touchet delivered the policy to Bartch on March 9, 1998, together with a statement of good health to be signed by Bartch. This statement provided, among other things, that Bartch was in good health and had not consulted a physician within ninety days. In fact, Bartch had consulted Dr. Jack Lyon on February 12, 1998, for treatment of bronchitis, which was unrelated to the Marfan's Syndrome. Bartch died on August 29, 1998, of complications of Marfan's Syndrome. Appellee refused to pay the policy proceeds because the application did not disclose the Marfan's Syndrome and the March 9, 1998, statement of good health did not disclose Bartch's visit to Dr. Lyon for bronchitis.

Appellant filed this suit, seeking to recover the policy proceeds, statutory penalty, interest, and attorney's fees. The suit named appellee and Touchet as defendants.[1] Appellee filed an answer and counterclaim, seeking a declaratory judgment that appellee acted properly in voiding the policy *ab initio* and that appellee had no obligation to pay the proceeds under the policy. Appellee filed a motion for summary judgment, which the trial court granted, finding that the misrepresentations on the application were material as a matter of law.

In summary-judgment cases, this court need only decide if the granting of summary judgment was appropriate based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.* On a summary-judgment motion, once the moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 17 S.W.3d 467 (2000). Summary judgment is not appropriate where evidence, although

---

[1] After this court dismissed the appeal, appellant filed a motion to dismiss Touchet from the case. The motion was granted, and a final order was entered on June 4, 2002.

in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Lee v. Hot Springs Village Golf Sch.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997).

Appellant's argument on appeal is that summary judgment is not appropriate because there are material issues of fact remaining to be decided. In *Wozniak v. Colonial Insurance Co.*, 46 Ark. App. 331, 885 S.W.2d 902 (1994), this court cited a line of cases that held that, where the facts were truthfully stated to the *soliciting* agent but, by fraud, negligence, or mistake, are misstated *in the application*, the company cannot use the misstatements to avoid liability on the policy if the agent was acting within the scope of his real or apparent authority and there was no fraud or collusion on the part of the insured. Other cases in this line include *Interstate Fire Insurance Co. v. Ingram*, 256 Ark. 986, 511 S.W.2d 471 (1974); *Reliable Life Insurance Co. v. Elby*, 247 Ark. 514, 446 S.W.2d 215 (1969); *Millers Mutual Fire Insurance Co. v. Russell*, 246 Ark. 1295, 443 S.W.2d 536 (1969); *Desoto Life Insurance Co. v. Johnson*, 208 Ark. 795, 187 S.W.2d 883 (1945); *Aetna Life Insurance Co. v. Routon*, 207 Ark. 132, 179 S.W.2d 862 (1944); *Southern National Insurance Co. v. Heggie*, 206 Ark. 196, 174 S.W.2d 931 (1943); *Union Life Insurance Co. v. Johnson*, 199 Ark. 241, 133 S.W.2d 841 (1939); *General Agents Insurance Co. v. St. Paul Insurance Co.*, 22 Ark. App. 46, 732 S.W.2d 868 (1987); *Time Insurance Co. v. Graves.* 21 Ark. App. 273, 734 S.W.2d 213 (1987); *Gilcreast v. Providential Life Insurance Co.*, 14 Ark. App. 11, 683 S.W.2d 942 (1985). This court recently applied this line of cases in *Neill v. Nationwide Mut. Fire Ins. Co.*, 81 Ark. App. 67, 98 S.W.3d 448, in reversing a grant of summary judgment because the court found unanswered questions about whether the insurance company asked and correctly recorded the insured's answers concerning previous losses. Appellant is relying on this line of cases to establish that there are material issues of fact to be determined at trial and therefore summary judgment is inappropriate.

In *Graves, supra*, an insurance agent, who knew the Graveses and knew that Mrs. Graves had undergone an operation for cancer, told the insureds that he could provide her with coverage for her preexisting condition. The Graveses testified that the agent filled out the application and that they truthfully answered each question asked by the agent but that they did not read the applica-

tion before they signed it. One question asked on the application — whether the insured had previously been treated for cancer — was left unanswered. Subsequently, an amendment to the application was received by the agent containing the unanswered question. The amendment already had the word "no" typed on it, and the agent testified that he got Mr. Graves to sign it. The amendment stated that Mr. Graves hereby amends "my application." Mr. Graves testified that the amendment bore his signature, but that he did not remember signing it. The court stated that the jury could have found that his signature did not constitute an untruthful statement as to Mrs. Graves's preexisting condition.

In *Ingram, supra,* the agent asked Ingram questions and filled out the application, which Ingram signed. Although there were several questions answered incorrectly, Ingram testified that he correctly answered each question that the agent asked and, therefore, the agent must have inaccurately recorded his answers. The court stated that the insurance company was not entitled to a directed verdict under the evidence in that case and that there was no error in instructing the jury that, where the facts were truthfully stated to an agent but, by fraud, negligence, or mistake, the agent misstated the information, the company cannot avoid liability if the agent had authority and there is no fraud or collusion on the part of the insured.

Appellee relies on *Dodds v. Hanover Insurance Co.,* 317 Ark. 563, 880 S.W.2d 311 (1994), for the general rule that the knowledge of a *soliciting* agent cannot be imputed to the company in order to avoid liability in this case. *Dodds* involved a backdated policy. The insureds in *Dodds* contacted an agent to obtain coverage on their business. The agent submitted an application to the company for a policy expected to become effective June 1, 1989. On that same date, the insureds suffered damage to their building. The damage was reported to the agent, but not to the insurance company, the next day. On June 5, 1989, the insureds mailed the premium to the company. The company issued a policy on June 29, 1989, effective June 1, 1989. In May 1990, the insureds finally notified the company of the damage suffered on June 1, 1989. When the company refused payment, the insureds filed suit and the trial court granted summary judgment to the company. The supreme court affirmed the grant of summary judgment, holding that, because the agent was a soliciting agent, his knowledge of the

loss prior to the issuance of the policy was not imputed to the company. Also, the court appeared to rely on the fact that this was a backdated policy. *Dodds, supra.* However, *Dodds* does not discuss the line of cases cited above.

Appellee also relies on *Carmichael v. Nationwide Life Insurance Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991), where the court stated that a person is bound under the law to know the contents of the papers he signs and that he cannot excuse himself by saying that he did not know what the papers contained. In *Carmichael, supra,* the insured's beneficiary appealed from an order of summary judgment in favor of the insurer. The evidence showed that the agent asked questions and recorded Mr. Carmichael's answers on the application. Mr. Carmichael then signed the application. Based on misrepresentations in the policy that Mr. Carmichael did not suffer from diabetes, the insurer refused to pay the benefits under the policy. The appellant, Mrs. Carmichael, argued that the agent must have failed to ask her husband the question or that the agent must have inaccurately recorded his answer, because her husband had suffered from diabetes for many years and would not have responded negatively to the question. However, the court stated that there was no evidence to sustain Mrs. Carmichael's allegations and that the only person with personal knowledge of what transpired was the agent, because Mr. Carmichael had died. The agent, in his affidavit, averred that he had asked every question on the application and that he had correctly recorded Mr. Carmichael's answers. The court noted that Mr. Carmichael had signed a certification that the information in the application was true and stated that this was at least probative evidence of his misrepresentation. Because Mrs. Carmichael offered no evidence to rebut any of the assertions made by the insurer, the court found that summary judgment was appropriate.

As stated by Judge Mayfield of this court,

> The distinction . . . is that . . . the insurance agent, whether a general or soliciting agent, had been given authority by the company to obtain the information necessary to complete the application, and to accept the "knowledge" obtained in doing so. That is his "job," so anything he learns in relation thereto is imputed to the company.

*Gilcreast,* 14 Ark. App. at 16, 683 S.W.2d at 945 (MAYFIELD, J., concurring). Furthermore, we note that *Carmichael* was also relied

upon by the appellant in *Neill v. Nationwide Mutual Fire Insurance Co., supra.* We rejected the argument in that case, effectively limiting *Carmichael* to situations where the plaintiff offers no evidence of incorrect or fraudulent recordation of an applicant's answers to rebut the insurer's assertion to the contrary. In the present case, appellant did, in fact, offer such evidence in her testimony and, under such circumstances, *Carmichael* is inapplicable. *See Neill, supra.*

■ ■ Appellee also makes the argument that Ark. Code Ann. § 23-79-107 (Supp. 2001) provides that an insurer may rescind a policy on proof of *any* misrepresentation with respect to a medical impairment. However, this argument sweeps too broadly and ignores the plain language of the statute. The statute states that misrepresentations and the like "shall not prevent a recovery" unless they are fraudulent or material. Such a statement merely provides a minimum prerequisite to the insurer's successful defense; that is, the misrepresentation must be proved to have been fraudulent or material. *See Old Republic Ins. Co. v. Alexander,* 245 Ark. 1029, 436 S.W.2d 829 (1969) (SMITH, J., concurring). That is by no means the equivalent of saying that every fraudulent or material misrepresentation shall *ipso facto* prevent a recovery. *Id.* The burden was on appellee to sustain its contention that the facts not disclosed were material to the risk assumed by it or that, in good faith, it would not have issued the policy had it known the true facts. *See Old Republic Ins. Co. v. Alexander, supra; Capital Life & Accident Ins. Co. v. Phelps,* 76 Ark. App. 428, 66 S.W.3d 678 (2002).

■ Although not cited by either party, *Old Republic Insurance Co. v. Alexander, supra,* held that the materiality to the risk of a fact misrepresented, omitted, or concealed is a question of fact so long as the matter is debatable. It is a question of law only when it is so obvious that a contrary inference is not permissible. *Id.* Here, appellee relies on two alleged misrepresentations: the nondisclosure of Bartch's Marfan's Syndrome on the November 1, 1997, application and the failure to disclose Bartch's February 12, 1998, visit to Dr. Lyon for treatment of bronchitis on the March 9, 1998, in the statement of good health. It is hard to see how Bartch's February 12 visit to the doctor for treatment of bronchitis could causally be related to Marfan's Syndrome and therefore be material to the risk assumed by appellee. We believe the Marfan's Syndrome would be a material fact. The issue is whether this was disclosed to the company via Touchet, the agent. Appellee's vice-

president, Ferry Bunting, testified by affidavit that, if appellee had known of Bartch's health problems, it would not have issued the policy. However, Bunting offered no proof of any underwriting practices either in Bunting's own company or within the industry generally with regard to applicants with the type of health conditions reflected in Bartch's records.

■■ As the supreme court recognized in *Old Republic Insurance Co. v. Alexander, supra*:

> It is significant, as pointed out by the chancellor, that appellant produced no record of its own underwriting standards, nor did it attempt to show general standards in the underwriting profession or insurance trade by disinterested witnesses. It relied solely on the retrospective and possibly self-serving declarations of conclusions by this witness . . . his testimony cannot be considered as that of a disinterested witness. In weighing testimony, courts must consider the interest of a witness in the matter in controversy. Facts established by the testimony of an interested witness, or one whose testimony might be biased, cannot be considered as undisputed or uncontradicted. While the testimony of such a witness may not be arbitrarily disregarded, a trier of facts is not required to accept any statement as true merely because so testified. It cannot be said that such testimony is arbitrarily disregarded when it is not consistent with other evidence in the case, or unreasonable in its nature or is contradicted. Nor is it arbitrarily disregarded where facts are shown which might bias the testimony or from which an inference may be drawn unfavorable to the witness' testimony or against the fact testified to by him.

*Id.* at 1039, 436 S.W.2d at 835-36 (citations omitted); *see also Capital Life & Accident Ins. Co., supra.* Appellant denied appellee's request for admission that Bartch did not disclose his Marfan's Syndrome. Even if one assumes that Marfan's Syndrome is material to the risk that appellee assumed, that does not end the inquiry. *See Phelps v. U.S. Credit Life Ins. Co.*, 336 Ark. 257, 984 S.W.2d 425 (1999). For appellee to prevail, it must prove that there was a nondisclosure of that information. Appellant and another witness both testified by affidavit that they were present when Touchet asked Bartch whether Bartch had any disease or physical disorder and Bartch replied that he had Marfan's Syndrome. This is where what Bartch told Touchet becomes critically important and why we believe there are material issues of fact

that would preclude summary judgment. *See Neill v. Nationwide Mut. Fire Ins. Co., supra.*

Reversed and remanded.

ROBBINS, J., agrees.

VAUGHT, J., concurs.

LARRY D. VAUGHT, Judge, concurring. I concur in the result based on the reasoning previously set forth in my concurring opinion in *McQuay v. Arkansas Blue Cross & Blue Shield*, 81 Ark. App. 77, 98 S.W.3d 454.